IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ABEL CAMPOS,<br>*Plaintiff*<br><br>-vs-<br><br>STEVES & SONS, INC.<br>*Defendant* | §<br>§<br>§<br>§<br>§   SA-18-cv-00357-XR<br>§<br>§<br>§<br>§<br>§ |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's Motion for Summary Judgment Post-Remand (ECF No. 71), Plaintiff's Response (ECF No. 72), and Defendant's Reply (ECF No. 75). After careful consideration, the Court issues the following order.

### BACKGROUND[1]

Defendant Steves & Sons, Inc. ("Defendant" or "Steves") is a San Antonio-based manufacturer of wooden residential doors. ECF No. 51 at 2. Steves hired Plaintiff Abel Campos ("Plaintiff" or "Campos") in 2008 as a welder. *Id*. Campos was later promoted to a position cleaning and maintaining glue spreaders used in the manufacturing process. *Campos v. Steves & Sons Inc.*, 10 F.4th 515, 518 (5th Cir. 2021). Campos worked for Steves from 2008 until 2015 when he learned that he needed open heart surgery. ECF No. 51 at 2. Campos informed Steves that he needed to take time off for the surgery and provided an FMLA certification form signed by his physician. *Id*. at 2–3. Campos's last day of work was July 20, 2015. *Id*. Campos experienced extreme complications from his surgery which left him comatose and in critical condition. *Campos*, 10 F.4th at 519.

---

[1] These facts are taken from the pleadings and supporting evidence on the record and are undisputed unless otherwise noted.

Campos was released from the hospital on September 16, 2015. ECF No. 51 at 3. His discharge paperwork indicates he was not to return to work until cleared by a clinic physician. *Id*. On October 27, 2015, Campos returned to Steves & Sons and met with Human Resources. *Id*. At that time, he presented a note signed by a licensed-vocational nurse ("LVN") stating that he "may return to work/school, no restrictions." *Id*.

On the same date, Campos met with Jim Parker, Steves' Chief Engineer. *Id*. at 4. Campos recorded this conversation using his phone and later had the conversation transcribed. *See* ECF No. 43-12. [2] Parker told Campos that his previous position had been filled but offered Campos an alternate position on the steel-line. ECF No. 43-12, Recording Tr. at 598. He described the position as "a serious job . . . a job that I think somebody with your mentality and ability could handle." *Id*. at 594. This job was "better" than Campos's previous role, had "equal pay, [] better status, better conditions, [was] more friendly to [Campos] and his condition, and a better job for advancement.'' *Campos*, 10 F.4th at 523.

At that meeting, Parker and Campos discussed Campos's physical capabilities. The transcript of the recorded conversation shows Parker stating that "this [the steel-line] here is going to be a lot less strenuous work than lifting and pushing and shoving . . . and working in the shop." ECF No. 43-12, Recording Tr. at 609. When Campos stated he had "no restrictions [but that it would] take me a little while to get back in," Parker responded, "Oh, we understand. Again, we're not talking about something that requires a 21-year old athlete . . . . The machine does the work. Just somebody . . . who understands how it works, being able to make mechanical adjustments. . .

---

[2] Campos recorded two conversations between himself and Jim Parker, one on October 27, 2015 and another on November 30, 2015. The parties dispute whether the recordings were tampered with and have introduced expert testimony in support of their various positions. ECF Nos. 69, 74. The Court denied Defendant's Motion to Strike and Exclude Plaintiff's Rebuttal Audio Forensics Expert and, as such, the contents of the recordings are appropriate evidence at this stage. *Reeves*, 530 U.S. at 151.

." *Id*. at 612. At the end of the conversation, Plaintiff told Parker, "I'll take the job. . . I'm not going nowhere. . . I wouldn't be here talking to you if I didn't want a job." *Id*. at 605. The conversation ended with Parker saying he would speak with several other team members about the open role and would speak with Campos after Thanksgiving. *Id*. at 615.

The parties dispute what happened when Campos returned to work on November 30th. Campos argues that Parker rescinded his offer to join the steel-line team, offering transcriptions of the audio recordings in support. The recording indicates that the position was not rescinded because of Plaintiff's health or physical ability to work. Instead, Parker expressed concerns about both the job market and Campos's ability to remain in the position "long term." *See* ECF No. 43-12 at 594–95 ("I can't start somebody down that job that's not really going to be long term."); *id*. at 609 ("I mean, you've got to be committed to this."); *id*. at 599 ("You know, I can do it, if you need me to, to go get Chromes and show how many days you were missing before you had a near death experience. And then you -- you know, you -- you have exceeded the FM -- FLMA requirements."); *id*. at 605 (asking Campos to admit if the position is "not where you think your future is."); *id*. at 571 ("I mean, we don't want to get, you know, 60 days downstream…and have wasted all their time."); *id* at 575 ("I didn't want to call on you and you might tell me to go fly a kite."); *id*. at 569 ("At this point it's the wrong time of the year, it's the wrong everything . . . this is the time of the year you just get by."); *id*. at 572 ("Also, bad time of the year.").

Defendant claims that Campos rejected the offer. *See* ECF No. 37-41 at 35–37 (claiming Campos "told me that [the steel line is] just not what he wants to do. His heart -- he said, That's not what I am. I -- I just really like welding and fabricating."); *id*. at 40 ("Q: But in the second meeting, it's your recollection that [Campos] turned the job down and quit. A. That's correct.").

Regardless of what happened during that conversation, Campos was formally terminated on November 30, 2015. ECF No. 43-2 at 78. The termination paperwork states that Campos "was terminated because he exhausted his FMLA leave (and was not making monthly payments on ins[urance]. And also for medical reasons." ECF No. 43-2 at 78–80.

In December 2015, Campos applied for Social Security Disability benefits. ECF No. 51 at 6. His application was denied. After filing a charge with the Equal Employment Opportunity Commission, Campos filed suit in state court alleging disability discrimination and failure to accommodate under the Texas Labor Code and the Americans with Disabilities Act ("ADA"), retaliation under the Texas Labor Code and the Family and Medical Leave Act ("FMLA"), and interference under the FMLA. Steves removed the case to federal court. *Campos*, 10 F.4th at 519. This Court granted Defendant's Motion for Summary Judgment and dismissed all four of Plaintiff's claims. ECF No. 51.

On appeal, the Fifth Circuit affirmed the dismissal of the Texas Labor Code violations and the FMLA interference claim but found that fact issues precluded summary judgment on the FMLA retaliation claim, reversed, and remanded. Following remand, Steves submitted a Motion for Summary Judgment Post-Remand—solely on the issues of damages.

**LEGAL STANDARDS**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support

an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may

5

not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## DISCUSSION

For purposes of Defendant's Motion for Summary Judgment Post-Remand, this Court assumes that there is a genuine dispute of material fact as to whether Steves retaliated against Campos for utilizing his leave under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq. Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 527–29 (5th Cir. 2021) (affirming that Campos established a *prima facie* case of retaliation and adequately rebutted Steves' proffered reasons for termination). The Court further assumes that, notwithstanding the findings in the Fifth Circuit, Campos may argue on remand he is currently able to work for purposes of the damages assessment. *See infra* Section A (discussing Plaintiff's claim for back pay). On remand, Steves argues that it is entitled to summary judgment as a matter of law because Campos cannot establish that he suffered damages. Campos seeks the following damages:

> (1) Compensation for all reasonable damages, including, but not limited to, past and future wages and other compensation and benefits;
>
> (2) Compensatory damages such as mental anguish and emotional pain and suffering;
>
> (3) Liquidated damages;
>
> (4) Punitive damages;
>
> (5) Reinstatement;
>
> (6) Attorney's and court fees;
>
> (7) Interest

ECF No. 1-5 at 8–9.

A.     **Back Pay**

To recover lost wages, Campos must be able to return to his job as a welder at Steves & Sons or to an equivalent position. 29 U.S.C. § 2614. Specifically, he must be able to perform the essential duties of that position. 29 C.F.R. § 825.216 ("If the employee is unable to perform an essential function of the position because of a physical or mental condition… the employee has no right to restoration to another position under the FMLA."); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002) ("Section § 2617 provides no relief unless the employee has been prejudiced by the violation."); *see also Gamboa v. Henderson*, 240 F.3d 1074 (5th Cir. 2000) (interpreting the enforcement provisions of Title VII and finding that "front and back pay compensate a plaintiff for wages and other benefits she would have earned if she had continued to work. . . . For this reason, such damages strike us as inappropriate if the plaintiff claims that she is unable to work because she is disabled."); *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008) ("An employee also has no right to reinstatement—and, therefore, damages—if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job.").

To support their argument that Campos is unable to work, Defendant cites the "law of the case doctrine" as well as the "mandate rule," and argue that these doctrines prevent Campos from relitigating his ability to work. Defendant is correct that the Fifth Circuit determined that Campos was "not qualified" to work. *Campos*, 10 F.4th at 525. However, this determination was made with regards to Plaintiff's Texas Chapter 21 disability discrimination claim and specifically noted that "qualification" was not at issue in the FMLA retaliation context. *Campos*, 10 F.4th at 528. ("The question as to retaliation, though, is not whether Campos was qualified to return to work."). Instead, the Circuit found that Campos presented a viable case on his retaliation claim, reversed

7

our decision, and remanded for further proceedings. *Campos*, 10 F.4th at 540. It would be counterproductive for the Fifth Circuit to have reversed and remanded the retaliation claim intending for this Court to now dismiss said claim using a standard the Circuit determined to be irrelevant. Thus, this Court interprets the Fifth Circuit's decision to leave open Campos's ability to argue that he was able to work, at least for damages purposes.

Defendant further argues that Plaintiff's post-termination statements in his social security disability application, as well as his ongoing medical treatment, preclude him from arguing he was able to work. However, the record also indicates that Steves believed Campos was physically capable of returning to work as of October 27, 2015.[3] Both parties offered evidence supporting the fact that Steves was prepared to offer Campos a replacement position on the steel-line when he returned to work.[4] Whether Steves offered Campos a replacement position casts doubt on their subsequent claim that he was physically unable to work. Viewing the evidence in the light most favorable to the nonmoving party, *First Colony Life Ins. Co.*, 555 F.3d at 181, this Court finds that the record indicates a genuine dispute as to Campos's ability to work and his claim for back pay may proceed to trial.

Because we determine that Campos sufficiently disputes his ability to work, we will not address Defendant's claims regarding mitigation.

---

[3] The Court previously concluded that Campos rejected Parker's offer to join the steel line. *See* ECF No. 51 at 6. Upon reconsideration, this fact is in question. During his deposition, Parker recalled Campos quitting. ECF No. 37-21 at 40. However, Campos's audio recording of the same meeting indicates not only that Campos did not quit, but that he expressed his regrets and sadness that the offer was rescinded. ECF No. 21-13 at 8 ("Oh, gosh, Jim, this is just a blow to the freaking -- I mean, this is just not what I wanted to hear. I've been praying every day all the time . . . .").

[4] *See* ECF No. 43-12 at 598; ECF No. 37-41 at 32. Further, both Plaintiff's audio recording and Parker's deposition testimony indicates that Parker believed Campos could physically handle the job. ECF No. 43-12 at 594 (describing the position as one that "somebody at… your ability could handle."); ECF No. 37-41 at 32 (stating the position had "better conditions" and was "more friendly to [Campos] and his condition."); ECF No. 43-12 at 29 (calling the position "a lot less strenuous work than lifting and pushing and shoving…and working in the shop."); *id*. at 612 (describing the role as not "something that requires a 21-year old athlete…The machine does the work. Just somebody…who understands how it works, being able to make mechanical adjustments…"). It would be highly unusual for a company to extend a job offer to a candidate they knew was physically incapable of performing the requisite tasks.

B.   **Front Pay and Reinstatement**

Section § 2617 of the FMLA states that "[a]ny employer who violates section 2615 of this title shall be liable to any eligible employee affected . . . for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Reinstatement and front pay are equitable remedies that the district court may award, *Bogan v. MTD Consumer Grp., Inc.*, 919 F.3d 332, 335 (5th Cir. 2019), although reinstatement is the preferred equitable remedy. *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007). Front pay awards must be "reasonable under the facts of the case," *Downey*, 510 F.3d at 544,[5] but the failure to mitigate damages may decrease an award. *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1470 (5th Cir. 1989) (reduction under the Age Discrimination in Employment Act); *Powers v. Northside Indep. Sch. Dist.,* 951 F.3d 298 (5th Cir. 2020) (Texas Whistleblower Act); *Bogan*, 839 F. App'x at 337 n.2 (Title VII).

Awards of front pay or reinstatement are within the Court's discretion. This Court sees no need to address the availability of front pay or feasibility of reinstatement at this time. Plaintiff's claims may proceed as to the request for these equitable remedies.

C.   **Lost Benefits**

Regarding Plaintiff's request for lost retirement benefits, Defendant presents evidence that Plaintiff was never entitled to retirement benefits. ECF No. 71 at 11–12. Plaintiff failed to address this argument and, thus, has waived it. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) ("[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived"); *see e.g.,Broadcast Music, Inc. v. Bentley*, Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at

---

[5] Several factors may be considered when awarding front pay, including (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship. *Downey*, 510 F.3d at 544.

*2 (W.D. Tex. Feb. 28, 2017) (finding that when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed.") (citing FED. R. CIV. P. 56(e)(2)); *cf. Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding plaintiff abandoned claim when she failed to defend it in a response to a motion to dismiss).

Campos's claim for lost insurance benefits fairs no better. The correct measure of damages for lost insurance benefits in FMLA cases is either the actual replacement cost for the insurance or expenses actually incurred that would have been covered under a former insurance plan. *Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006). Plaintiff's expert on damages, Dr. Gene Trevino, calculated the lost insurance benefits by estimating the "employer paid portion" of said benefits. The lost "value" of benefits, absent actual costs to the plaintiff, is not recoverable. *Id*.

### D.     Punitive and Emotional Distress Damages

As a matter of law, punitive damages and emotional distress damages are not available under the FMLA. *Walpool v. Frymaster, L.L.C.*, No. CV 17-0558, 2017 WL 5505396, at *5 (W.D. La. Nov. 16, 2017) ("The FMLA does not authorize recovery of damages for emotional distress."); *Wiggins v. Coast Pro., Inc.,* No. CIV. A. 14-0002, 2015 WL 692921, at *6 (W.D. La. Feb. 18, 2015) ("The FMLA does not provide for emotional distress, nominal, or punitive damages."); *Duchesne v. Shaw Grp. Inc.*, No. CIV. A. 06-607, 2008 WL 4544387, at *5 (W.D. La. Sept. 10, 2008) ("The FMLA does not allow for the recovery of nominal damages, punitive damages, or damages for emotional distress; rather, only actual monetary losses may be recovered."); *Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 788 (M.D. La. 2004) ("It is clear that nominal damages are not available under the FMLA because the statutory language of the FMLA specifically limits recovery to actual monetary losses. Similarly, the FMLA does not provide for

10

the recovery of punitive damages or damages for emotional distress."). Campos cannot recover damages on these grounds.

### E. Remaining fees and costs

Plaintiff also seeks liquidated damages, interest, fees, and costs. The FMLA provides for liquidated damages in the amount equal to actual lost wages and benefits, 29 U.S.C. § 2617 (a)(1)(A)(iii), as well as for interest on that amount, 29 U.S.C. § 2617 (a)(1)(A)(ii). Likewise, the FMLA awards "in addition to any judgment awarded to the plaintiff," attorney's fees, reasonable expert witness fees, and other costs. 29 U.S.C. § 2617. These awards depend on Plaintiff's success at trial, and this Court will reassess the available awards at that time.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 71) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claims for punitive damages, emotional distress damages, lost insurance benefits, and lost retirement benefits are **DISMISSED WITH PREJUDICE**.

It is so **ORDERED**.

**SIGNED** this 27th day of September, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE